T.C. Memo. 2015-246

UNITED STATES TAX COURT

ESTATE OF BERNICE NEWBERGER, DECEASED, JP MORGAN CHASE
BANK, N.A., SUSAN NEWBERGER, AND NANCY NEWBERGER, CO-
TRUSTEES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26241-13.                           Filed December 22, 2015.

<u>John Paul Barrie</u>, for petitioner.

<u>Alexander R. Roche</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  After concessions the issues for decision are the values,

pursuant to section 2031, of three pieces of fine artwork.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2]                    FINDINGS OF FACT

Bernice Newberger, a resident of Palm Beach County, Florida, died in Chicago, Illinois, on July 28, 2009 (date of death), and her will was probated in Illinois.[2]  The Estate of Bernice Newberger (estate), on October 28, 2010, timely filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, on which it reported values relating to Tête de Femme (Jacqueline) by Pablo Picasso (the Picasso), Untitled by Robert Motherwell (the Motherwell), and Elément Bleu XV by Jean Dubuffet (the Dubuffet).

The market for fine artwork declined precipitously during the autumn of 2008.  In October of that year 44% (i.e., double the October 2007 rate) of the artwork up for auction failed to reach its minimum or guaranteed price and was returned to the auctioneer or owner.  In 2009 Sotheby's and Christie's, the top artwork auction houses, experienced auction revenue decreases of 53% and 46%, respectively.  Lower sale prices and a lack of available, high-quality artwork contributed to the decline in auction revenue.  The artwork market rebounded in

---

[1](...continued)
Revenue Code relating to the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The estate and cotrustees had a mailing address in Illinois when the petition was filed.  The record does not disclose where the cotrustees resided when the petition was filed.

**[\*3]** 2010, with auction revenue from that year nearly doubling the 2009 total and almost matching the 2007 high point.

The Picasso is a signed and dated 35.5- by 23-inch oil on canvas work created in May 1963. It depicts Pablo Picasso's second wife, Jacqueline, whom he portrayed in over 400 paintings. On February 10, 1981, Ms. Newberger acquired the Picasso for $195,000. It was purchased from the Saidenberg Gallery in New York, New York, and previously owned by Daniel-Henry Kahnweiler of Paris, France, and Mr. and Mrs. Leigh Block of Chicago, Illinois.

In November 2009 Nancy, Ms. Newberger's daughter, sought appraisals of the estate's property. In December 2009 Sotheby's offered to sell the Picasso and guaranteed that it would pay the estate $3 million if the Picasso did not sell at auction. Later that month Sotheby's increased the guarantee to $3.5 million. The estate rejected the offer and on December 18, 2009, agreed to sell the Picasso at Christie's February 2, 2010, London auction. That agreement provided the estate with a guarantee of $4,784,689 and 60% of the hammer price (i.e., the amount of the winning bid) exceeding that amount. Christie's listed the Picasso in its catalog with an expected sale price between $4,784,689 and $6,379,585 and provided the estate with an appraisal report stating the Picasso had a $5 million date of death value. On February 2, 2010, the Picasso sold at Christie's London auction for a

**[*4]** total price of $12,927,874 (i.e., an $11,484,000 hammer price and $1,443,874 paid by the buyer to Christie's). The estate reported, on its Form 706, that the Picasso had a $5 million date of death value.

The Motherwell is a signed 66- by 50-inch oil on canvas work created in 1966. On May 27, 1969, Ms. Newberger acquired it for $8,000 from the Marlborough-Gerson Gallery in New York, New York. On November 11, 2010, Robert Motherwell's In Black and White No. 5 (i.e., a 66- by 50-inch oil on canvas work created in 1966) sold for $1,426,500. On the basis of an appraisal from Sotheby's the estate reported, on its Form 706, that the Motherwell had a $450,000 date of death value.

The Dubuffet is a signed and dated 79.25-inch tall, 44-inch wide, and 4-inch deep transfer on polyester created in 1967. On June 10, 1982, Ms. Newberger acquired it for $40,000 from the Galerie Beyeler in Basel, Switzerland. On November 14, 2007, Jean Dubuffet's Elément Bleu XIII, a similarly sized work from the same series, sold for $825,000. On the basis of an appraisal from Sotheby's the estate reported, on its Form 706, that the Dubuffet had a $500,000 date of death value.

Respondent, on August 14, 2013, issued the estate a notice of deficiency and determined that the Picasso, the Motherwell, and the Dubuffet had date of

**[\*5]** death values of $13 million, $1.5 million, and $750,000, respectively. On November 8, 2013, the estate timely filed a petition with the Court.

OPINION

A tax is imposed on the transfer of a decedent's taxable estate (i.e., the fair market value of all property at the time of the decedent's death minus certain deductions). See secs. 2001, 2031(a), 2051. Fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs. We determine the fair market value of the artwork on the basis of the preponderance of the evidence. See Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

The estate and respondent, respectively, contend that the Picasso had a date of death value of $5 million and $10 million. The Picasso sold at Christie's London Auction on February 2, 2010, for $12,927,874. The estate's experts ask us to disregard this sale because "[i]t was a fluke", and the estate unconvincingly contends that this sale is not relevant because it could not have been reasonably anticipated on the date of death. To the contrary, the sale of the Picasso may "be taken into account as evidence of fair market value as of the valuation date." See Estate of Jung v. Commissioner, 101 T.C. 412, 431-432 (1993); see also First

[*6] Nat'l Bank of Kenosha v. United States, 763 F.2d 891, 894 (7th Cir. 1985). Indeed, no evidence is more probative of the Picasso's fair market value than its direct sale price. See Ambassador Apartments, Inc. v. Commissioner, 50 T.C. 236, 242-243 (1968), aff'd, 406 F.2d 288 (2d Cir. 1969). The estate's experts' failure to consider the sale of the Picasso renders their valuation wholly unreliable. Respondent's expert, after adjusting the $12,927,874 sale price downward to reflect July 28, 2009, market conditions, valued the Picasso at $10 million. We agree with respondent's expert.

The estate's experts and respondent's expert agree that the $1,426,500 sale of In Black and White No. 5, on November 11, 2010, was the best comparable relating to the Motherwell.[3] Although In Black and White No. 5 shares many characteristics with the Motherwell (i.e., they were created in 1966, are the same size, and have a similar style and composition), In Black and White No. 5 was sold nearly 16 months after the date of death. By that time, the artwork market had largely rebounded from its downturn. Respondent's expert did not make a market adjustment as she made relating to the Picasso and, inexplicably, valued the Motherwell at $1.5 million, an amount higher than the sale price of In Black and

---

[3]A property's fair market value is generally determined by comparable sales of similar properties that are reasonably proximate in time. See Estate of Spruill v. Commissioner, 88 T.C. 1197, 1229 n.24, 1233 (1987).

**[*7]** White No. 5, which sold <u>after</u> the market rebounded. The estate's experts, however, adjusted the $1,426,500 sale price of In Black and White No. 5 downward to reflect July 28, 2009, market conditions and valued the Motherwell at $800,000. We agree with the estate's experts.

The estate and respondent, respectively, contend that the Dubuffet had a date of death value of $500,000 and $900,000. The best comparable relating to the Dubuffet was the November 14, 2007, sale of Jean Dubuffet's Elément Bleu XIII (i.e., a similarly sized work from the same series) for $825,000. Respondent's expert's contention that the Dubuffet's value was <u>higher</u> during the market downturn than Elément Bleu XIII's value <u>before</u> the market downturn is, in short, nonsensical. We agree with the estate that Sotheby's $500,000 appraisal (i.e., the value the estate reported on its Form 706) reflects the Dubuffet's date of death value.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.